IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

BONNIE HEATHER MILLER, and THE LEAGUE OF WOMEN VOTERS OF ARKANSAS

*Plaintiffs,*

v.

JOHN THURSTON, in his official capacity as Secretary of State of Arkansas,

*Defendant.*

Case No. 5:20-cv-05163-TLB

Hon. Timothy L. Brooks

## COMPLAINT

Plaintiffs Bonnie Heather Miller and the League of Women Voters of Arkansas ("the League"), for their Complaint against Defendant John Thurston, in his official capacity as Arkansas Secretary of State ("Defendant"), state and allege as follows:

## INTRODUCTION

1. Ms. Miller and hundreds of members of the League were among the nearly 150,000 people who signed two petitions to amend the Arkansas constitution to make the election system more fair and accountable. These petitions were sponsored by Arkansas Voters First ("AVF"), which engaged in a massive, important, and popular campaign for election reform in Arkansas. By July 6, 2020, AVF had gathered nearly 100,000 signatures from registered voters on two different petitions. By August 20, they had gathered nearly 150,000 signatures on each petition. The first petition seeks to amend the electoral system to allow for a fair, citizen-led, redistricting process, and the seconds seeks to adopt open primaries, with ranked choice voting in the general election, to try to reduce political polarization in the state. Polling shows that Arkansans are fed up with

1

partisan gerrymandering and polarized politics, and AVF mobilized Arkansans to to do something about it. Now, Defendant seeks to use the ambiguity of Ark. Code Ann. § 7-9-601(b)(3) to create a Catch-22 that prevents the petitions from appearing on the November 3, 2020 ballot.

2. AVF, having succeeded in gathering over 90,000 signatures by July 6, 2020, was informed by Defendant on July 14 that, even though they facially had sufficient signatures to proceed to a verification analysis, that would not occur because one of the statements filed with Defendant was considered deficient and that justified invalidation of all the submitted signatures.

3. Ark. Code Ann. § 7-9-601(b)(1) requires that a petition sponsor obtain a "state *and federal* criminal record seach" from "the Division of Arkansas State Police." (emphasis added).

4. The Arkansas State Police cannot provide federal background checks for sponsors of ballot initiatives as they are not explicitly authorized under Arkansas state or federal law. Therefore, no sponsor can comply with the statutory requirement that "a sponsor shall obtain, at its cost, from the Department of Arkansas State Police, a current state and federal criminal record search on every paid canvasser […]." Ark. Code Ann. § 7-9-601(b)(1).

5. Ark. Code Ann. § 7-9-601(b)(3) requires that a petition sponsor certify that its paid canvassers have "passed a criminal background check."

6. The Arkansas State Police Criminal Background Check System and the Arkansas Crime Information Center ("ACIC") do not assign a "passing" or "failing" grade. Therefore, an individual cannot "pass" or "fail" a background check obtained through the Arkansas State Police, as required by Ark. Code Ann. § 7-9-601(b)(3).

7. On August 27, 2020 the Arkanas Supreme Court ruled that "the standard for having 'passed' a criminal background check appears to be having no criminal conviction for a felony offense or violation of the election laws, fraud, forgery, or identification theft as stated in section

7-9-601(d)(3)." *Miller v. Thurston*, 2020 Ark. 267 (Ark. Sup. Ct. Aug 27, 2020), slip op at 8, FN 4.

8. The background checks conducted by AVF showed that none of the paid canvassers used by AVF had been convicted of a felony.

9. Offenses in which law enforcement officials do not obtain fingerprints, like civil traffic citations and violations of election laws, are excluded from the data sent to ACIC and Arkansas State Police Criminal Background Check System. Therefore, the state background check cannot identify whether an "individual pled guilty or nolo contendere to violations of election laws, fraud, forgery, or identification theft throughout the United States" as required by Ark. Code Ann. § 7-9-601(b)(1).

10. Defendant did not object that AVF did not obtain the—unobtainable—federal criminal record search from the State Police. Rather, Defendant said it would not proceed to verify the signatures on the petitions because AVF did not include the false statement that its paid canvassers had "passed" a background check, when, in reality, a criminal record search is not something that can be "passed" and even if it were, that statutory provision does not explain what would constitute a passing grade.

11. Plaintiffs' rights have been severely burdened by an inartfully drafted Arkansas statutory provision that requires a petition sponsor to either submit a false statement to Defendant or have its two petitions rejected in their entirety. The latter would prevent consideration of the petitions by the electorate as a whole in November 2020 and reduce the total quantum of political speech. Additionally, the statutory provision in issue does not serve the state interest of preventing fraud in signature collection.

## PARTIES

12. Plaintiff Bonnie Heather Miller is a resident and eligible, registered voter in the State of Arkansas who signed the "Citizens' Commission for an Independent Redistricting Commission" ("CRC Petition") and "A Constitutional Amendment Establishing Top Four Open Primary Elections and Majority Winner General Elections With Instant Runoff If Necessary" ("OPA Petition"). Ms. Miller is also the Chairperson of Arkansas Voters First, Inc. Ms. Miller resides in Fayetteville, Arkansas.

13. Plaintiff League of Women Voters of Arkansas ("the League") is an affiliate of the League of Women Voters of the United States, a nonpartisan political organization, that encourages informed and active participation in government, works to increase understanding of major public policy issues, and influences public policy through education and advocacy on issues. Its goal is to empower everyone to shape better communities through education and study of the issues that challenge Arkansans. Hundreds of members of the League are eligible, registered voters in the State of Arkansas and signed the CRC Petition and/or the OPA Petition.

14. Defendant John Thurston is the Arkansas Secretary of State and the chief elections officer in the State of Arkansas, and is charged under the Arkansas Constitution with receiving filed petitions and determining the sufficiency of signatures.

## JURISDICTION AND VENUE

15. Plaintiffs bring this action under 42 U.S.C. §§ 1983 and 1988 to redress the deprivation, under color of state law, of rights secured by the U.S. Constitution.

16. This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1343 because the matters in controversy arise under the Constitution and laws of the United States.

17. This Court has personal jurisdiction over Defendant, Secretary of State, who is sued in his official capacity only.

18. Venue is proper in this district under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claim have occurred in this district. Plaintiff Miller lives in Fayetteville and is the President of the League of Women Voters of Washington County.

19. This Court has authority to enter declaratory and injunctive relief under 28 U.S.C. §§ 2201 and 2202 and Rule 65 of the Federal Rules of Civil Procedure.

## FACTUAL ALLEGATIONS

*Filing of AVF's CRC and OPA Petitions*

20. Arkansas Voters First ("AVF") is a ballot question committee, duly registered with the Arkansas Ethics Commission on March 5, 2020.

21. Open Primaries Arkansas ("OPA") is a ballot question committee, duly registered with the Arkansas Ethics Commission on June 8, 2020.

22. On July 6, 2020 AVF filed the following with Defendant:

   a. the CRC Receipt for Initiative or Referendum Petition;

   b. the OPA Receipt for Initiative or Referendum Petition;

   c. an affidavit sworn by Ms. Miller certifying that the CRC Petition included 98,728 signatures spanning 15,118 petition parts (the "CRC Signature Count Affidavit");

   d. an affidavit sworn by Stephanie Matthews certifying that the OPA Petition included 94,913 signatures spanning 15,917 petition parts (the "OPA Signature Count Affidavit");

   e. an unsworn certification by Ms. Miller as to paid canvassers ("CRC Paid Canvasser Certification");

  f. an unsworn certification by Ms. Matthews as to paid canvassers ("OPA Paid Canvasser Certification";

  g. a final list of all the paid canvassers that circulated the CRC Petition ("CRC Paid Canvasser List");

  h. a final list of all the paid canvassers that circulated the OPA Petition ("OPA Paid Canvasser List");

  i. a paid canvasser signature card for each paid canvasser that circulated either the CRC or the OPA Petition (the "Paid Canvasser Signature Cards"); and

  j. the original signed ballot petitions for both the CRC Petition and the OPA Petition.

23. On August 5, 2020 Ms. Miller submitted an additional 45,896 original signed ballot petitions in support of the CRC Petition, along with another Signature Count Affidavit certifying that fact.

24. On August 20, 2020 Ms. Matthews submitted an additional 59,179 signed ballot petitions in support of the OPA Petition along with another Signagure Count Affidavit certifying that fact.

25. In total, 144,624 signaturs have been submitted in support of the CRC Petition, and 154,092 signatures have been submitted in support of the OPA Petition.

26. The CRC Paid Canvasser Certification, that was drafted by Defendant, contains the following statement "I am submitting a final total paid canvasser list and a signature card for each paid canvasser on this total paid canvasser list in compliance with § 7-9-111(f) and § 7-9-601(a)."

27. The OPA Paid Canvasser Certification, that was drafted by Defendant, contains the following statement "I am submitting a final total paid canvasser list and a signature card for each paid canvasser on this total paid canvasser list in compliance with § 7-9-111(f) and § 7-9-601(a)."

28.     The CRC Paid Canvasser List included the following statement: "In compliance with Arkansas Code Annotated § 7-9-601, please find the list of paid canvassers that will be gathering signatures on the Redistricting Commission Constitutional Amendment. On behalf of the sponsors, Arkansas Voters First, this statement and submission of names serves as certification that a statewide Arkansas State Police background check, as well as, 50-state criminal background check have been timely acquired in the 30 days before the first day the Paid canvasser begins to collect signatures as required by Act 1104 of 2017."

29.     The OPA Paid Canvasser List included the following statement: "In compliance with Arkansas Code Annotated § 7-9-601, please find the list of paid canvassers that will be gathering signatures on the Constitutional Amendment Establishing Top Four Open Primary Elections and Majority Winner General Elections With Instant Runoff. On behalf of the sponsors, Arkansas Voters First, this statement and submission of names serves as certification that a statewide Arkansas State Police background check, as well as, 50-state criminal background check have been timely acquired in the 30 days before the first day the Paid canvasser begins to collect signatures as required by Act 1104 of 2017."

30.     AVF employed the firm National Ballot Access ("NBA") to manage the paid canvassing effort for the CRC Petition and the OPA Petition.

31.     From May 22, 2020 to July 24, 2020 NBA, on behalf of AVF, submitted partial versions of the CRC Paid Canvasser List to Defendant each day that one or more paid canvassers were added. NBA, on behalf of AVF, filed the full CRC Paid Canvasser List with Defendant on July 24, 2020. Each submission included the (true) certification that criminal background checks for paid canvassers had been "timely acquired."

32. From June 2 to July 24, 2020 NBA, on behalf of AVF submitted partial versions of the OPA Paid Canvasser List to Defendant each day that one or more paid canvassers were added. NBA, on behalf of AVF, filed the full OPA Paid Canvasser List with defendant on July 24, 2020. Each submission included the (true) certification that criminal background checks for paid canvassers had been "timely acquired."

33. Ark. Code Ann. § 7-9-601(d) provides: "[b]efore obtaining a signature on an initiative or referendum petition as a paid canvasser, the prospective canvasser shall submit in person or by mail to the sponsor: (1) The full name and any assumed name of the person; (2) The current residence address of the person and the person's permanent domicile address if the person's permanent domicile address is different from the person's current residence address; (3) A signed statement taken under oath or solemn affirmation stating that the person has not pleaded guilty or nolo contendere to or been found guilty of a criminal felony offense or a violation of the election laws, fraud, forgery, or identification theft in any state of the United States, the District of Columbia, Puerto Rico, Guam, or any other United States protectorate; (4) A signed statement that the person has read and understands the Arkansas law applicable to obtaining signatures on an initiative or referendum petition; and (5) A signed statement that the person has been provided a copy of the most recent edition of the Secretary of State's initiatives and referenda handbook by the sponsor."

34. NBA collected sworn statements for each paid canvasser as required by Ark. Code Ann. § 7-9-601(d) and submitted them to the Defendant in batches, each time the partial Paid Canvasser List was submitted to Defendant.

35. The provision of sworn statements for each paid canvasser along with partial versions of the CRC and OPA Paid Canvasser Lists by NBA to Defendant meant that contact

details and a sworn statement as to the absence of any criminal background for every paid canvasser were made known to Defendant before each canvasser gathered any signatures.

36.     The background checks conducted by AVF showed that none of the paid canvassers used by AVF had been convicted of a felony.

*Arkansas' Statutory Requirements for Ballot Petition Signature Facial Validity*

37.     Ark. Code Ann. § 7-9-126(a) provides: "Upon the initial filing of an initiative petition or referendum petition, the official charged with verifying the signatures shall (1) Perform an initial count of the signatures; and (2) Determine whether the petition contains, on its face and before verification of the signatures of registered voters, the designated number of signatures required by the Arkansas Constitution and statutory law in order to certify the measure for the election ballot."

38.     To achieve facial validity, and thereby be entitled to a cure period, any petition for a statewide proposed measure in 2020 must contain the following: (1) at least 89,151 total signatures at its face; (2) at least 75% of that total (66,863) must be valid signatures of legal voters; and (3) at least 75% of the required number of signatures of legal voters from each of at least fifteen counties of the state. Ark. Const. Amend. 7; Ark. Code Ann. § 7-9-111(d).

39.     Ark. Code Ann. § 7-9-111(d)(1) provides: "If the signatures submitted on a statewide initiative petition…are found to be insufficient, the Secretary of State shall forthwith notify the sponsors in writing…and shall set forth his or her reasons for so finding. When the notice is delivered, the sponsors shall have thirty (30) days in which to do any or all of the following: (1) Solicit and obtain additional signatures; or (B) Submit proof to show that the rejected signatures or some of them are good and should be counted."

*Defendant's Objection to AVF's Paid Canvasser List Certification*

40. On July 14, 2020 Defendant wrote to AVF stating that he was unable to count any signatures submitted by AVF in connection with either the CRC Petition or the OPA Petition because he determined that "acquiring a criminal background check is not the same as passing a criminal background check" and therefore the CRC Paid Canvasser List certification and OPA Paid Canvasser List certification did not comply with Ark. Code Ann. § 7-9-601(b)(3) and each petition was "insufficient" to qualify for the November 3, 2020 General Election Ballot.

41. On July 21, 2020 Defendant wrote to AVF setting out additional deficiencies with the OPA Petition.

42. On July 23, 2020 Defendant wrote to AVF concluding that the face of the AVF Petition includes 90,493 signatures.

43. On August 10, a Special Master found that "the Secretary of State erroneously culled 586 signatures from the open primaries/rank-choice voting petition, leaving the petition with sufficient signatures on its face if the background-check certification language is determined to be adequate." *Miller v. Thurston*, 2020 Ark. 267, slip op. at 6.

*Criminal Background Checks in Arkansas*

44. Ark. Code Ann. § 7-9-601(b) provides: "(1) To verify that there are no criminal offenses on record, a sponsor shall obtain, at the sponsor's cost, from the Division of Arkansas State Police, a current state and federal criminal record search on every paid canvasser to be registered with the Secretary of State. (2) The criminal record search shall be obtained within thirty (30) days before the date that the paid canvasser begins collecting signatures. (3) Upon submission of the sponsor's list of paid canvassers to the Secretary of State, the sponsor shall certify to the

Secretary of State that each paid canvasser in the sponsor's employ has passed a criminal background check in accordance with this section."

45. The Arkansas State Police cannot provide federal background checks for sponsors of ballot initiatives as they are not explicitly authorized under Arkansas state or federal law. Therefore, no sponsor can comply with the statutory requirement that "a sponsor shall obtain, at its cost, from the Department of Arkansas State Police, a current state and federal criminal record search on every paid canvasser […]." Ark. Code Ann. § 7-9-601(b)(1).

46. The Arkansas State Police Criminal Background Check System retrieves an individual's criminal history, if any, from the Arkansas Crime Information Center ("ACIC") using fingerprints obtained through Arkansas' Automated Fingerprint Identification System ("AFIS"). If an individual is arrested for a criminal offense, that individual is fingerprinted, and their fingerprint card is transmitted to ACIC for inclusion in any criminal record search.

47. When a criminal record search through the Arkansas State Police is requested, they either receive a record of the individual's Arkansas felony and misdemeanor convictions, pending Arkansas felony arrests within the preceding 3 years (where a person has been arrested and has not entered a plea or gone to trial), and the subject's sex offender status or a disclaimer noting that "no criminal history [was] found for this subject."

48. The Arkansas State Police Criminal Background Check System and ACIC do not assign a "passing" or "failing" grade. Therefore, an individual cannot "pass" or "fail" a background check obtained through the Arkansas State Police, as required by Ark. Code Ann. § 7-9-601(b)(3).

49. "[T]he concept of 'passing' a background check is not firmly rooted in fact. A State Police background check merely shares the content of one or more databases. The State Police do not 'pass' or 'fail' the subject of a background check. Accordingly, certifying that a paid canvasser

has 'passed' a background check leaves the sponsor with the Hobson's choice of not quite truthfully claiming that a canvasser 'passed' a background check…or the more similarly unpalatable prospect of having all the petition parts rejected. Secondly, appearing on a database as having a criminal conviction is not conclusive of the question of whether a paid canvasser committed or did not commit a criminal offense. *See, e.g.*, *Trammell v. Wright*, 2016 Ark. 147, 489 S.W.3d 636." *Miller v. Thurston*, 2020 Ark. 267, slip op. at 11 (Hart J, dissenting).

50. AVF was not truthfully able to certify to the Defendant that the AVF-paid canvassers for the CRC Petition and the OPA Petition had "passed" a criminal background check.

51. Even if a background check was something that could be "passed," Ark, Code Ann. § 7-9-601 does not set out a clear standard for what would constitute passing. In fact the statute sets out two contradictory possible standards. Ark. Code Ann. § 7-9-601(b)(1) begins: "To verify that there are no criminal offenses on record…" while § 7-9-601(d)(3) requires the paid canvassers to swear that they have "not pleaded guilty or nolo contendere to or been found guilty of a criminal felony offense or a violation of the election laws, fraud, forgery, or identification theft in" any part of the United States.

52. It was not until August 27, 2020, that the Supreme Court of Arkansas defined "having 'passed' a criminal background check [as] having no criminal conviction for a felony offense or a violation of the election laws, fraud, forgery, or identification theft as stated in section 7-9-601(d)(3)." *Miller v. Thurston*, 2020 Ark. 267, slip op. at 8, FN 4.

53. Offenses in which law enforcement officials do not obtain fingerprints, like civil traffic citations and violations of election laws, are excluded from the data sent to ACIC and Arkansas State Police Criminal Background Check System. Therefore, the state background check cannot identify whether an "individual pled guilty or nolo contendere to violations of election laws,

fraud, forgery, or identification theft throughout the United States" as required by Ark. Code Ann. § 7-9-601(b)(1).

54. On August 27, 2020, the Supreme Court of Arkansas found that AVF "did not comply with Arkansas Code Annotated section 7-9-601(b)(3) when they failed to certify that their paid canvassers had passed any criminal background checks." *Miller v. Thurston*, 2020 Ark. 267, slip op. at 9.

*Defendant Has Sought to Remove CRC Petition and OPA Petition from the November 3, 2020 Ballot*

55. On August 20, 2020 the official ballot was sent to counties by Defendant, and included, *inter alia*, the CRC Petition as Issue 4 and the OPA Petition as Issue 5 on the November 3, 2020 Ballot. 2020 Arkansas Ballot Issues, https://www.uaex.edu/business-communities/voter-education/state-ballot-issues.aspx, Ark. Code Ann. § 7-5-203(a)(1).

56. On August 27, 2020, Defendant "informed county election officials that the proposals—previously certified as Issues 4 and 5 for the November ballot—had been invalidated and do not need to appear on the ballots that they have printed for their areas." John Moritz, "2 measures kicked off ballot" *Northwest Arkansas Democrat Gazette* (Aug. 28, 2020, https://www.nwaonline.com/news/2020/aug/28/2-measures-kicked-off-state-ballot/.

**CAUSE OF ACTION**

**COUNT I – UNDUE BURDEN ON BALLOT ACCESS AND RIGHTS TO FREEDOM OF SPEECH AND ASSOCIATION UNDER THE FIRST AND FOURTEENTH AMENDMENTS OF THE U.S. CONSTITUTION**

1. Plaintiffs repeat and reallege paragraphs 1 through 56 above.

2. Plaintiffs' rights to petition, speech, and association are protected by the First and Fourteenth Amendments to the United States Constitution. The gathering of signatures on the CRC Petition and the OPA Petition (together "the Petitions") is "'core political speech,' for which First Amendment protection is 'at its zenith.'" *Buckley v. Am. Constitutional Law Found., Inc.*, 525 U.S.

13

182, 183 (1999) (*quoting Meyer v. Grant*, 486 U.S. 414, 422 (1988)). A petition signer "expresses the political view that the question should be considered 'by the whole electorate' … [and that] expression of a political view implicates a First Amendment right." *Doe v. Reed*, 561 U.S. 186, 195 (2010) (*quoting Meyer*, 486 U.S. at 421).

3. Ark. Code Ann. § 7-9-601(b)(3) required AVF to make a false statement to Defendant, namely that the paid canvassers it had engaged had "passed" a criminal background check, when "passing" such a background check is impossible

4. The Arkansas Supreme Court's interpretation of Ark. Ann. Code § 7-9-601(b)(3) on August 27, 2020 is of no help to Plaintiffs. *Miller v. Thurston*, 2020 Ark. 267, slip op. at 8, FN 4. It too would require AVF to submit a (different) false statement in order for Plaintiffs' signatures to proceed to verification analysis and eventual placement on the ballot.

5. Requiring AVF to make a false statement to Defendant in order for the signatures of over 90,000 Arkansans, like Plaintiff Miller and hundreds of members of the League, to proceed to verification analysis by Defendant makes it "less likely that appellees will garner the number of signatures necessary to place the matter on the ballot, thus limiting their ability to make the matter the focus of statewide discussion." *Meyer*, 486 U.S. at 423. In the case of the Petitions, the false statement requirement has made it impossible for gathered signatures to proceed to verification analysis, and therefore it has removed entirely the chance for a statewide vote on the Petitions in November 2020.

6. When analyzing the constitutionality of petition requirements, a Court must "weigh the 'character and magnitude' of the burden the State's rule imposes on [Plaintiffs' First Amendment] rights against the interests the State contends justify that burden, and consider the extent to which the State's concerns make the burden necessary." *Timmons v. Twin Cities Area*

*New Party*, 520 U.S. 351, 358 (117 S. Ct. 1364) (quoting *Burdick v. Takushi*, 504 U.S. 428, 434 (112 S.Ct. 2059)). "If [the challenged] requirement severely burdens the plaintiffs' ability to engage in political speech, strict scrutiny applies. Otherwise, lesser scrutiny applies." *Miller v. Thurston*, 967 F.3d 727, 739 (8th Cir. 2020) (citations omitted).

7. As applied to Plaintiffs, the false statement requirement is a severe burden because none of the gathered signatures will proceed to verification analysis by Defendant and therefore none can count towards the consideration of the Petitions by the whole electorate.

8. The state has an interest in ensuring that the paid canvassers do not commit fraud when gathering signatures. *Miller v. Thurston*, 967 F.3d at 740 ("we have characterized a state's interest in protecting the integrity of its initiative processes as 'paramount.'" *citing Hoyle v. Priest*, 265 F.3d 699, 704 (8th Cir. 2001)).

9. The state interest in prevention of fraud by paid canvassers was not served by the requirement that sponsors certify that their paid canvassers had "passed" a criminal background check because that wording was so inartful as to produce a meaningless certification. If a sponsor gave a false statement and said its canvassers had passed a criminal background check, the Defendant could not have known if that meant the sponsor had checked that there were "no criminal offenses on record" (i.e. no felonies, misdemenaors or traffic violations), per Ark. Code Ann. § 7-9-601(b)(1), or had checked that they had "not pleaded guilty or nolo contendere to or [had] been found guilty of a criminal felony offense or a violation of the election laws, fraud, forgery, or identification theft in" any part of the United States, per Ark. Code Ann. § 7-9-601(d)(3).

10. The false statement requirement of Ark. Code Ann. § 7-9-601(b)(3) does not serve the state's interest in ensuring that paid canvassers do not commit fraud in signature gathering.

11. Even if the false statement requirement does serve the state interest in ensuring that paid canvassers do not commit fraud in signature gathering, it is not narrowly tailored to achieve that interest.

12. Unless the false statement requirement as it was applied to AVF by Defendant with respect to the Petitions is struck down as unconstitutional, approximately 150,000 Arkansans' signatures will not proceed to verification analysis by Defendant, thus eliminating Plaintiffs' ability to make the matter the focus of statewide discussion and voters' constitutional right to express their association or not on the ballot initiative.

13. Absent injunctive relief, Plaintiffs will suffer irreparable harm. Plaintiffs have no adequate remedy at law.

**PRAYER FOR RELIEF**

WHEREFORE, the Plaintiffs respectfully request that the Court enter an order:

1. Declaring that the false statement requirement of Ark. Code Ann. § 7-9-601(b)(3) is an unconstitutional burden as applied to Plaintiffs' First and Fourteenth Amendment rights to political expression.

2. Award attorney's fees and costs associated with this litigation; and

3. Provide any additional relief the Court deems just, proper, and appropriate.

Respectfully submitted,

/s/ David Couch

| | |
|---|---|
| Ruth Greenwood* | David A. Couch |
| Campaign Legal Center | 1501 North University Ave |
| 125 Cambridgepark Drive | Suite 228 |
| Cambridge, MA 02140 | Little Rock, AR 72207 |
| rgreenwood@campaignlegal.org | (501) 661-1300 |
| (202) 560-0590 | arhog@icloud.com |

Christopher Lamar*
Campaign Legal Center
1101 14th Street NW, Suite 400
Washington, DC 20005
clamar@campaignlegal.org
(202) 736-2200

*Attorneys for the Plaintiff*

* Pro Hac Vice admissions forthcoming