**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION**

BONNIE HEATHER MILLER, and THE
LEAGUE OF WOMEN VOTERS OF
ARKANSAS,

*Plaintiffs,*

v.

JOHN THURSTON, in his official capacity
as Secretary of State of Arkansas,

*Defendant.*

Case No. 5:20-cv-05163-TLB

Hon. Timothy L. Brooks

---

**BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY
INJUNCTION**

---

**INTRODUCTION**

The Arkansas Constitution enshrines a fundamental right for Arkansas voters to amend the state constitution through the ballot initiative process requiring them to submit petitions signed by a specified number of Arkansas citizens This gives Plaintiffs (an individual voter and a league of voters) a fundamental right guaranteed by the First and Fourteenth Amendments of the U.S. Constitution to have the signatures supporting two petitions count in determining whether the electorate can vote on the proposed constitutional amendment. Plaintiffs' rights have been severely burdened by a poorly drafted Arkansas statutory provision that requires a petition sponsor to submit a false statement to Defendant in order to avoid having the petition rejected in its entirety. Because the sponsor refused to submit such a false statement, Defendant barred the two petitioned-for amendments from appearing on the November ballot and restricted the total quantum of political speech for no justifiable reason.  This Court's intervention is urgently required.

1

The false statement that the Arkansas statute requires of a petition sponsor is a certification that its paid canvassers have "passed" a criminal background check. In fact, criminal background checks merely report information without grading anyone as having "passed" or "failed." Nevertheless, on August 27, 2020, nearly two months after the petition filing deadline, the Arkansas Supreme Court invented an explanation—never articulated or even hinted at in the statute, the Secretary of State's written guidance, or the Secretary's interactions with Plaintiffs— of what it means to "pass" a background check. That the definition comes after the fact is not the only problem. The court's standard is also an impossible standard to meet—the court requires a petition sponsor to certify whether its paid canvassers have ever committed a "violation of the election laws, fraud, forgery, or identification theft" *even though many of these crimes are not included in a background check.*

To be sure, the State has a legitimate interest in ensuring that only law-abiding citizens act as paid canvassers, in order to protect the integrity of the petition circulation process.  But the irony of requiring petition sponsors to make a *false* statement in order to uphold the integrity of that process is both painful and obvious. Plaintiff Miller and many members of Plaintiff League of Women Voters of Arkansas have joined with approximately 150,000 other Arkansans to petition the government to make two critical reforms to the electoral system so it is more responsive to the voters. Yet that very government, after the fact, established an impossible hurdle preventing the voters from speaking for or against the reforms. Plaintiffs seek a preliminary injunction against the unconstitutional burden imposed by the poorly worded statute, and the incongruous interpretation of it. The signatures of Plaintiffs, and all those similarly situated, should be submitted for signature verification by Defendant and if there is sufficient support from eligible

voters, the entire electorate should have the opportunity to consider the two proposed election reforms  in November 2020.

## FACTUTAL BACKGROUND

Plaintiff Miller and hundreds of members of Plaintiff the League of Women Voters of Arkansas ("the League") signed two petitions seeking to place constitutional amendments on the November 2020 election ballot. Ex. A (Declaration of Bonnie Heather Miller dated September 2, 2020), ¶¶ 6, 8. The first petition would create a citizen's redistricting commission to empower voters and not politicians to draw district lines. The second would mandate, for certain state and federal offices, top-four open primary elections and majority-winner general elections with instant runoff voting if necessary. Arkansas law requires that ballot initiatives obtain 89,151 signatures. Even though the pandemic curtailed efforts to solicit signatories, Plaintiffs submitted approximately 150,000 signatures in support of each measure.

### A.   In Order to Render a Petition Eligible for the Ballot, a Petition Sponsor Is Required to Make a False Statement.

Under the Arkansas Constitution, "the people reserve to themselves the power to propose . . . amendments to the Constitution, and to enact or reject the same at the polls independent of the General Assembly." Ark. Const. art. 5, § 1. Initiative petitions must be filed with the Secretary of State "not less than four months before the election"—this year by July 6, 2020—and must be proposed by ten percent of the legal voters. *Id.* The requisite number of signatures is measured by the total votes cast in the most recent gubernatorial election. *Id*. For the 2020 election, a proposed constitutional amendment must be accompanied by 89,151 signatures.[1] The initiative and

---

[1]   *See* Ark. Sec'y of State, 2020 Initiatives and Referenda Handbook at 2, https://www.sos.arkansas.gov/uploads/2019-2020_I__R_Handbook_-_Jan_2020.pdf (last visited Sep. 2, 2020).

referendum provision of the Constitution is "self-executing . . . but laws may be enacted to facilitate its operation." Ark. Const. art. 5, § 1.

The legislature has enacted a number of such laws. For example, paid canvassers, before obtaining a single signature, must submit a document to the ballot initiative sponsor that contains, among other things: (1) the full name and any assumed name of the person; (2) their current residence; and (3) a signed statement taken under oath or solemn affirmation stating that the person has not pleaded guilty or nolo contendere to, or been found guilty of, a criminal felony offense or a violation of the election laws, fraud, forgery, or identification theft. § 7-9-601(d). Paid canvassers must also be trained about Arkansas law regarding petition gathering by the initiative's sponsor and provided a copy of the Secretary of State's Initiatives and Referenda Handbook. *Id.* § 7-9-111(f)(2)(B)(i) & (ii). Ark. Code Ann. § 7-9-601(b) further provides:

> (1) To verify that there are no criminal offenses on record, a sponsor shall obtain, at the sponsor's cost, from the Division of Arkansas State Police, a current state and federal criminal record search on every paid canvasser to be registered with the Secretary of State. (2) The criminal record search shall be obtained within thirty (30) days before the date that the paid canvasser begins collecting signatures. (3) Upon submission of the sponsor's list of paid canvassers to the Secretary of State, the sponsor shall certify to the Secretary of State that each paid canvasser in the sponsor's employ has passed a criminal background check in accordance with this section.

Ark. Code Ann.§ 7-9-601(b)(1) is poorly drafted, because the Arkansas State Police cannot provide federal background checks for sponsors of ballot initiatives as they are not authorized to do so under Arkansas state or federal law. Therefore, no sponsor can comply with the statutory requirement that "a sponsor shall obtain, at its cost, from the Department of Arkansas State Police, a current state and federal criminal record search on every paid canvasser." Ark. Code Ann. § 7-9-601(b)(1). Ex. B (Declaration of John M. Brooks. Jr, dated September 2, 2020), ¶ 9.

That is not the only flaw in Ark. Code Ann.§ 7-9-601(b), as "The Arkansas State Police Criminal Background Check System and ACIC do not assign a 'passing' or 'failing' grade.

Therefore, an individual cannot 'pass' or 'fail' a background check obtained through the Arkansas State Police, as required by Ark. Code Ann. § 7-9-601(b)(3)." *Id.* ¶ 7. Until *Miller v. Thurston*, 2020 Ark. 267 (Sup. Ct. Ark. Aug. 27, 2020), the *only* guidance that the State gave as to what constitutes compliance by the sponsor with the "passed" language of § 7-9-601(b)(3) was a typed form ("Paid Canvasser Certification") that it required petition sponsors to complete and sign when they submitted the gathered signatures (along with forms for the "Receipt of Initiative or Referendum Petition" and the "Signature Count Affidavit"). Ex. A (Miller Decl.), Exs. 4, 2, 3. The Paid Canvasser Certification includes three sentences, one of which is: "I am submitting a final total paid canvasser list and signature card for each paid canvasser on this total paid canvasser list in compliance with § 7-9-111(f) and § 7-9-601(a)."

The Secretary must "ascertain and declare the sufficiency or insufficiency of the signatures submitted" on each petition within thirty days after it is filed. *Id.* § 7-9-111(a). The Secretary must notify the initiative sponsor if he determines there are an insufficient number of signatures; if there are sufficient signatures totaling at least 75% of the required amount, the sponsor has a 30-day cure period to obtain additional signatures or prove the validity of existing signatures. *Id.* § 7-9-111(d)(1); *see also* Ark. Const. art. 5, § 1. If the petition is deemed "insufficient" on its face, then the Secretary will not proceed to the signature verification analysis. *Id. See also*, Ark. Sec'y of State, 2020 Initiatives and Referenda Handbook at 8, https://www.sos.arkansas.gov/uploads/2019-2020_I__R_Handbook_-_Jan_2020.pdf (last visited Sep. 2, 2020).

### B. The Signature Verification Analysis for Arkansas Petitions Includes a Review of the Eligibility of Each Petition Signer.

The Secretary may contract with the various county clerks for their assistance in verifying signatures on petitions, and the county clerk is required to return those petitions to the Secretary within ten days. Ark. Code Ann. § 7-9-111(b). The person verifying each signature then uses the

rules laid out in § 7-9-105(b) to determine how many verified signatures have been submitted by the sponsor. If the total number of verified signatures is above 89,151 (for 2020), then the petition will appear on the ballot and be voted on at the next general election.

### C. Arkansas Voters First's Filed Two Initiative Petitions to Reform the Election System.

Arkansas Voters First ("AVF") is a nonpartisan, nonprofit organization that was founded in February 2020. Ex. A Miller Decl., ¶ 2. AVF sponsored two petitions in 2020. The first—the Citizens' Commission for an Independent Redistricting Commission ("CRC Petition")—would create an independent redistricting commission in Arkansas. The second —the Open Primaries Arkansas ("OPA Petition")—would establish top-four open primary elections and majority-winner general elections with instant runoff voting if necessary, for certain state and federal offices. *Id.* ¶ 3, Ex. 1; Ex. C Declaration of Stephanie Robichaux Matthews (Sep. 2, 2020), Ex. 1.

In accordance with Chapter 9 of the Elections Code, AVF filed the following with Defendant on July 6, 2020:

(1) the CRC Receipt for Initiative or Referendum Petition, Ex. A Miller Decl., Ex. 2;

(2) the OPA Receipt for Initiative or Referendum Petition, Ex. C Matthews Decl. Ex. 2;

(3) the CRC Signature Count Affidavit sworn by Ms. Miller certifying that the CRC Petition included 98,728 signatures, Ex. A Miller Decl. Ex. 3;

(4) the OPA Signature Count Affidavit sworn by Stephanie Matthews certifying that the OPA Petition included 94,913 signatures, Ex. C Matthews Decl. Ex. 3;

(5) the CRC Paid Canvasser Certification (an unsworn certification by Ms. Miller), Ex. A Miller Decl. Ex. 4;

(6) the OPA Paid Canvasser Certification (an unsworn certification by Ms. Matthews) Ex. C Matthews Decl. Ex. 4;

6

(7) a final list of all the paid canvassers that circulated the CRC Petition ("CRC paid canvasser list"), Ex. A Miller Decl. Ex. 5;

(8) a final list of all the paid canvassers that circulated the OPA Petition ("OPA paid canvasser list") Ex. C Matthews Decl. Ex. 5; and

(9) the original signed petitions for both the CRC Petition and OPA Petition.

The CRC paid canvasser list was a printed excel file that included the following at the top of the first page:

> "In compliance with Arkansas Code Annotated § 7-9-601, please find the list of paid canvassers that will be gathering signatures on the Redistricting Commission Constitutional Amendment. On behalf of the sponsors, Arkansas Voters First, this statement and submission of names serves as certification that a statewide Arkansas State Police background check, as well as, 50-state criminal background check have been timely acquired in the 30 days before the first day the Paid canvasser begins to collect signatures as required by Act 1104 of 2017."

The OPA paid canvasser list was a printed excel file that included the following at the top of the first page:

> In compliance with Arkansas Code Annotated § 7-9-601, please find the list of paid canvassers that will be gathering signatures on the Constitutional Amendment Establishing Top Four Open Primary Elections and Majority Winner General Elections With Instant Runoff. On behalf of the sponsors, Arkansas Voters First, this statement and submission of names serves as certification that a statewide Arkansas State Police background check, as well as, 50-state criminal background check have been timely acquired in the 30 days before the first day the Paid canvasser begins to collect signatures as required by Act 1104 of 2017.

### D. Defendant Objected to AVF's Petitions Because the Sponsor Did Not Include the False Statement that Paid Canvassers had "Passed" Criminal Background Checks.

On July 14, 2020, Defendant informed AVF that he was not counting any signatures AVF submitted for either petition because, he claimed, the statements about criminal background checks on the CRC and OPA Paid Canvasser Lists were insufficient. Specifically, he concluded that

"*acquiring* a criminal background check is not the same as *passing* a criminal background check," and therefore it was insufficient for the Paid Canvasser Lists to state that the "statewide Arkansas State Police background check, as well as 50-state criminal background check have been *timely acquired*." Ex. A Miller Decl., Ex. 7.

Subsequent to this letter, both the CRC Petition and OPA Petition (together "the Petitions") were found to have over 89,151 signatures and so the *only* reason Defendant did not proceed to verify the approximately 150,000 submitted signatures[2] was because AVF refused to submit a false statement with the Petitions. Miller Decl., Ex. 9, *Miller v. Thurston*, 2020 Ark. 267 (Sup. Ct. Ark. Aug. 27, 2020), slip op. at 6.

### E.  The Arkansas Supreme Court Provided a Definition of "Passing" a Criminal Background Check That Is Impossible to Comply With.

On July 17, 2020 Plaintiff Miller and AVF filed an action in the Arkansas Supreme Court, pursuant to Ark. Code Ann. 7-9-112(a), seeking, *inter alia*, a permanent injunction requiring the Secretary to proceed to the signature verification analysis of the Petitions.

On August 27, 2020, the Arkansas Supreme Court determined that "the standard for having 'passed' a criminal background check appears to be having no criminal conviction for a felony offense or a violation of the election laws, fraud, forgery, or identification theft as stated in section 7-9-601(d)(3)." *Miller v. Thurston*, 2020 Ark. 267, slip op. at 8, FN 4. Unfortunately, this definition did not exist when AVF submitted its Paid Canvasser Lists. Moreover, it is itself impossible to comply with: "Offenses in which law enforcement officials do not obtain

---

[2] In compliance with Ark. Code Ann. § 7-9-111(d)(1)(A), AVF submitted an additional 45,896 signatures in support of the CRC Petition on August 5, 2020, and additional 59,179 signatures in support of the OPA Petition on August 20, 2020. This brought the total number of signatures that could be analyzed for verification for the CRC Petition to 144,624, and for the OPA Petition to 154,092. Ex. A Miller Decl., ¶ 11; Ex. C Matthews Decl. ¶ 2.

fingerprints, like civil traffic citations and violations of election laws, are excluded from the data sent to ACIC and Arkansas State Police Criminal Background Check System. Therefore, the state background check cannot identify whether an "individual pled guilty or nolo contendere to violations of election laws, fraud, forgery, or identification theft throughout the United States" as required by Ark. Code Ann. § 7-9-601(b)(1)." Ex. B Brooks Decl. ¶ 6b.

The background checks conducted by AVF showed that none of the paid canvassers used by AVF had been convicted of a felony. Ex. A Miller Decl. ¶ 19.

A petition sponsor cannot truthfully certify that its paid canvassers have "passed" a criminal background check, nor can they determine from a background check whether their paid canvassers have committed "a violation of the election laws, fraud, forgery, or identification theft." On July 6, when AVF submitted the Petitions, it could not have known the later definition (and even if it had known it, AVF could not have truthfully made such a certification). Defendant's requirement that AVF submit a false statement with the Petitions has nevertheless prevented the State from proceeding to the signature verification phase of the process and so, absent intervention by this Court, the Petitions will not appear on the November 3, 2020 ballot to be considered by the whole electorate.

## LEGAL STANDARD

District courts have "broad discretion when ruling on preliminary injunction requests." *CDI Energy Servs. v. W. River Pumps, Inc.*, 567 F.3d 398, 401 (8th Cir. 2009) (quoting *Coca-Cola Co. v. Purdy*, 382 F.3d 774, 782 (8th Cir. 2004)). The court considers four factors in considering whether to grant a preliminary injunction: (1) "the likelihood of success on the merits," (2) "the presence or risk of irreparable harm," (3) "the balancing of the harms of granting or denying an injunction," and (4) "the public's interest." *Id.*

**ARGUMENT**

**I.   Plaintiffs Are Likely to Succeed on the Merits of their Claims.**

Plaintiffs are likely to succeed on the merits of their First and Fourteenth Amendment claims because Defendant's enforcement of the requirement to sign a false certification severely burdens their core political speech of signing a ballot petition so that the amendment it proposes has a chance to be considered by the whole electorate. [3] Further, that requirement does not serve a compelling state interest. The Arkansas Constitution guarantees the State's citizens the "fundamental rights to petition for initiatives and referendums." *McDaniel v. Spencer*, 2015 Ark. 94, 457 S.W.3d 641, 657 (2015) (Hart, J., concurring). Once the right to petition for a state constitutional amendment has been extended to its citizens, the State must "accord the participants in that process the First Amendment rights that attach to their roles." *John Doe No. 1 v. Reed*, 561 U.S. 186, 195, (2010) *citing Republican Party of Minn. v. White,* 536 U.S. 765, 788, (2002). Plaintiffs have expressed their political view that the proposed amendments should be "considered 'by the whole electorate . . . [and that] expression of a political view implicates a First Amendment right." *Id.*, quoting *Meyer v. Grant*, 486 U.S. 414, 421 (1988). Although a state may regulate the initiative process, it may not "limit [Plaintiffs'] ability to make the matter the focus of statewide discussion" because that "has the inevitable effect of reducing the total quantum of speech on a public issue." *Meyer*, 486 U.S. at 423.

In order to determine whether an initiative petition regulation "impermissibly burdens [Plaintiffs'] First Amendment rights to express their views on a political matter" this Court must

---

[3] The county election officials had been instructed to include the questions from the Petitions on the printed ballots, but media reports suggest that immediately after the August 27 Arkansas Supreme Court ruling, Defendant started informally telling the county clerks to remove the Petitions' questions from the printed ballot. Compl. ¶ 54 Ballots must be mailed to UOCAVA voters by September 19, 2020, so there is still some, limited, time for this Court to act to protect Plaintiffs' constitutional rights. 52 U.S.C. § 20302(a)(8).

'weigh the character and magnitude of the burden the State's rule imposes on First Amendment rights against the interests the States contends justify that burden, and consider the extent to which the State's concerns make the burden necessary." *Miller v. Thurston*, 967 F.3d 727, 736 (8th Cir. 2020) (citing *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358 (1997)) (internal quotations omitted). If the rule imposes "'severe burdens on the plaintiffs' rights," it must be 'narrowly tailored and advance a compelling state interest.'" *Id*. "Lesser burdens, however, trigger less exacting review, and a State's important regulatory interests' will usually be enough to justify reasonable, nondiscriminatory restrictions.'" *Id*. (*quoting Burdick v. Takushi*, 504 U.S. 428, 434 (1992)).

A burden that "operate[s] to freeze the political status quo" is severe and warrants application of strict scrutiny. *Martin*, 649 F.3d at 685 (quoting *Jenness v. Fortson*, 403 U.S. 431, 438 (1971)). Likewise, "a law severely burdens voting rights if the burdened voters have few alternate means of access to the ballot," and such a "law impermissibly restricts 'the availability of political opportunity.'" *Citizens for Legislative Choice v. Miller*, 144 F.3d 916, 921 (6th Cir. 1998) (quoting *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983)). Indeed, "[t]he hallmark of a severe burden is exclusion or virtual exclusion from the ballot." *Libertarian Party of Ky. v. Grimes*, 835 F.3d 570, 574 (6th Cir. 2016).

Here, Arkansas law requires AVF either to submit a false statement or have the Petitions rejected. This Hobson's choice creates a severe burden on Plaintiffs' right to have a chance for their political views to be the focus of statewide discussion (through the appearance of the proposed amendments on the November, 2020 ballot).

11

**A. Arkansas' Requirement That AVF Either Submit a False Statement or Have the Petitions Rejected Creates a Severe Burden on Plaintiffs' Rights and Is Subject to Strict Scrutiny.**

Arkansas law requires that petition sponsors to obtain "at the sponsor's cost" and "within thirty (30) days before" each paid canvasser starts gathering signatures, a criminal background check. Ark. Ann. Code § 7-9-601(b)(1)-(2). The law then provides that when the names of paid canvassers are submitted to Defendant, the sponsor must certify that they all "passed a criminal background check." Ark. Ann. Code § 7-9-601(b)(3). But that is impossible. The "Arkansas State Police Criminal Background Check System and ACIC do not assign a "passing" or "failing" grade." Ex. B Brooks Decl. ¶ 7. Faced with this reality, AVF instead certified to Defendant that it had "timely acquired" the relevant background checks.[4]

The Arkansas Supreme Court's interpretation of Ark. Ann. Code § 7-9-601(b)(3) on August 27, 2020 is of no help to Plaintiffs. *Miller v. Thurston*, 2020 Ark. 267 (Sup. Ct. Ark. Aug. 27, 2020), slip op. at 8, FN 4. It too would require AVF to submit a different, but still false, statement in order for Plaintiffs' signatures to proceed to verification analysis and eventual placement on the ballot. Ex. B Brooks Decl. ¶ 6b ("the state background check cannot identify whether an "individual pled guilty or nolo contendere to violations of election laws, fraud, forgery, or identification theft throughout the United States").

Defendant's decision not to move on to the signature validation analysis for the AVF Petitions has entirely prevented Plaintiffs' political views (expressed through their signatures in support of the Petitions) from being put forward for statewide discussion on the November ballot. Plaintiffs are not facing a "mere inconvenien[ce.]" *Miller*, 967 F.3d at 739 (*citing Crawford v.*

---

[4] This section of the brief does not address the additional impossibility in Ark. Code Ann. § 7-9-601(b)—namely that subsection (1) asks a petition sponsor to obtain a state *and federal* criminal record search from the Division of Arkansas State Police, something that cannot be done—because it was not listed as a reason that Defendant rejected the Petitions. Ex. B Brooks Decl. ¶ 9.

*Marion Cty Election Bd.*, 553 U.S. 181, 205 (2008)). Plaintiffs face an obstacle that can *only* be surmounted by AVF giving a false statement to Defendant.

Typically, when ballot petition procedures are challenged in the Eighth Circuit, the relevant debate is over whether a particular requirement makes it too hard for a petition sponsor to gather sufficient signatures. *See, e.g.*, *Dobrovolny v. Moore*, 126 F.3d 1111 (8th Cir. 1997); *Bernbeck v. Gale*, 829 F.3d 643 (8th Cir. 2016); *Hoyle v. Priest*, 265 F.3d 699 (8th Cir. 2001); *Wellwood v. Johnson*, 172 F.3d 1007 (8th Cir. 1999). That is not the posture of the present case. Plaintiffs Miller and the League are not seeking a reduction in the number of signatures required, nor do they ask that the pool of persons from whom signatures may be gathered be expanded. They are not even seeking to relax the requirement that paid canvassers swear an oath that they have not committed a disqualifying crime before they can gather petition signatures. Plaintiffs merely ask that AVF not be required to make a false statement in order for the signatures already gathered on the Petitions to go through the verification process—that the statements AVF actually made be deemed sufficient—and Plaintiffs' voices are heard. The severity of the burden is unquestionable.

The question for this Court is whether the burdensome rule is necessary to achieve a substantial government interest and, if so, whether it is narrowly tailored to achieve that interest.

## B. Defendant's Interest in Rooting Out Fraud in the Initiative Process Is Not Furthered by Requiring a False Statement from AVF.

It cannot be in the State's interest to require petition sponsors to make false statements. The State does have an interest in "preventing fraud and abuse" by circulators. *Initiative & Referendum Inst. v. Jaeger*, 241 F.3d 614, 616 (8th Cir. 2001). The State's interest in "protecting the integrity of its initiative processes [is] paramount," is "not limited to just fraud and corruption," and includes "preventing mistakes…like duplicate signatures and signatures from ineligible

voters." *Miller*, 967 F.3d at 740 *citing Hoyle v. Priest*, 265 F.3d 699, 704 (8th Cir. 2001) and *Doe*, 561 U.S. at 198. But those interests do not justify what happened here.

The prevention of fraud and corruption is protected by a number of statutory provisions applicable to the canvassers themselves: first, paid canvassers must submit personal contact information, Ark Code Ann. § 7-9-601(d)(1)-(2), second, they must sign a statement that they have read and understand the relevant Arkansas law and have been provided with a copy of the Defendant's initiatives and referenda handbook, id. § 7-9-601(d)(4)-(5), and third, they must sign a sworn statement that they have not "pleaded guilty or nolo contendere to or been found guilty of a criminal felony offense or a violation of the election laws, fraud, forgery, or identification theft" in any part of the United States. *Id*. § 7-9-601(d)(3).

The state interest in fraud prevention is also protected by statutory provisions applicable to the petition sponsor: first, they must maintain copies of all the documents provided by the paid canvassers for three years after the general election, *id.* § 7-9-601(e), second, they must certify to the Defendant that they provided a copy of the initiatives and referenda handbook and explained the relevant Arkansas law to each paid canvasser, *id.* § 7-9-601(a)(2)(A)-(B), and third, they must obtain a background check within the 30 days before the date the canvasser begins collecting signatures, *id.* § 7-9-601(b)(1)-(2).

Finally, the state interest in fraud prevention is protected by requiring the petition sponsor to file a number of documents related to the paid canvassers with Defendant. The petition sponsor must file a list of the names of the canvassers *before* they begin collecting signatures along with the sworn statements made by the canvassers under Ark. Code Ann. § 7-9-601(d)(3), *id.* § 7-9-601(a)(C)-(D). This necessitates the sponsor filing updated lists of names and contact details, and sworn statements from paid canvassers on a rolling basis throughout signature collection. *After* the

14

signatures are collected, the sponsor must file a final list of contact details for the canvassers, a signature card for each paid canvasser,[5] and a certification that the canvasser "has passed a criminal background check."

If fraud has in fact occurred, the state can impose severe penalties. If a paid canvasser has committed a disqualifying offense, but signed a sworn statement to the contrary, then she can be charged with perjury which is a Class C felony. *Id.* § 5-53-102. If the paid canvasser knowingly makes a false statement on a petition verification form, they will be deemed guilty of a Class D felony. *Id.* § 7-9-109(d). And if a petition sponsor willfully violates the provision requiring that they obtain a background check then they will be guilty of a Class A misdemeanor. Id. § 7-9-601(b)(4).

Putting aside the false statement requirement (as to the "passing" of background checks), all the other statutory requirements set up a rigid regime to protect against fraud and abuse in the signature gathering process including both pre-filing provisions and hefty penalties for false statements by paid canvassers. Notably, fraud committed by a paid canvasser is a felony, while a false statement by a petition sponsor is only a misdemeanor, which suggests that the State is seeking to more aggressively deter fraud at the canvasser level than that of the sponsor.

It is plausible that if a background check could be passed (and certified as such) that this could place some onus for rooting out fraud on the petition sponsor rather than the State—on the theory that if someone has committed a fraud type crime previously, they are more likely to do so again. If the criminal background search returned results as to "violations of election laws, fraud, forgery, or identification theft" then this onus transfers from the State to the sponsor for preventing

---

[5] This is different to the sworn statement that must be provided to Defendant prior to canvasser beginning signature collection, as required by Ark Code Ann. § 7-9-601(a)(2)(D). The form of the card is provided in the 2020 Initiative and Referendum Handbook and states that is written pursuant to Ark. Code Ann. § 7-9-601(a)(3)(B).

fraud before it occurs could be realized. But if that is the system the State wants to establish, then it must design the system in such a way that it is possible for petition sponsors to comply. Until that system is devised, requiring false statements from petition sponsors simply will not further the State's interest in fraud prevention. In fact, the total amount of fraud occurring in the ballot petition process will increase by one false statement!

## II.  Plaintiffs Will Suffer an Irreparable Injury Without an Injunction.

If this Court does not grant an injunction, Plaintiffs will suffer imminent and irreparable injury. As this Court has recently found, with respect to First Amendment claims against the government:

> A plaintiff who shows he or she is likely to prevail on the merits of a First Amendment claim generally is presumed to satisfy the remaining *Dataphase* factors. *Minn. Citizens Concerned for Life*, 692 F.3d at 870. A plaintiff who has not made this showing against the government, conversely, is not entitled to a preliminary injunction no matter the outcome of an analysis of the remaining *Dataphase* factors. *Planned Parenthood Minn., N.D., S.D.*, 530 F.3d at 731–32.

*Miller v. Thurston*, No. 5:20-CV-05070, 2020 WL 2617312, at *9 (W.D. Ark. May 25, 2020), *rev'd on other grounds,* 967 F.3d 727 (8th Cir. 2020).

Other courts have also routinely held that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *See, e.g.*, *Elrod v. Burns*, 427 U.S. 347, 373-74 (1976) (*citing N.Y. Times Co. v. United States*, 403 U.S. 713, (1971)); *Johnson v. Minneapolis Park and Recreation Bd*., 729 F.3d 1094, 1101 (8th Cir. 2013); *Lowry ex rel. Crow v. Watson Chapel School Dist*., 540 F.3d 752, 761 (8th Cir. 2008); *Kirkeby v. Furness*, 52 F.3d 772, 774 (8th Cir. 1995). In this case, Plaintiffs' First Amendment rights with respect to the 2020 ballot will be entirely lost absent an injunction against the false statement requirement. It is no answer that AVF and its supporters like the Plaintiffs can try again in 2022. Even assuming

the State would not come with another dubious basis for rejecting the Petitions two years from now, for 2020, the Plaintiffs First Amendment rights are as burdened as they can be: there is no chance whatsoever that Plaintiffs' political views will be put to a public debate on the November ballot, because Defendant will not proceed to the signature verification analysis for the Petitions.

In sum, without an injunction from this Court, Plaintiffs will continue to suffer irreparable injury. This factor balances heavily in favor of Plaintiffs.

### III. The Balancing of Harm to Others and the Public Interest Also Weigh in Favor of Granting Plaintiffs' Motion Because the First Amendment Rights of Approximately 150,000 Arkansans Are at Stake

When the "Government is the opposing party," as is the case here, the remaining two factors for a preliminary injunction, "harm to the opposing party and weighing the public interest . . . merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009). The public interest in this case favors the issuance of a preliminary injunction, as the issuance of such relief would give the whole Arkansans electorate the ability to debate the political views of Plaintiffs and the 150,000 signers of the Petitions.

The subjects of the Petitions also weigh in favor of the imposition of an injunction because they both seek electoral reform – an issue of public importance. The CRC Petition seeks to create a citizens' redistricting commission, and as the U.S. Supreme Court has recognized, "One way [that states are restricting partisan considerations in redistricting] is by placing power to draw electoral districts in the hands of independent commissions. For example, in November 2018, voters in Colorado and Michigan approved constitutional amendments creating multimember commissions that will be responsible in whole or in part for creating and approving district maps for congressional and state legislative districts." *Rucho v. Common Cause*, 139 S. Ct. 2484, 2507 (2019). Nationwide, independent redistricting commissions are extremely popular across party lines, with at least 60 percent of Democrats, Independents, and Republicans supporting their

creation.  The Arkansas Citizens Redistricting Commission is also very popular in Arkansas across party lines, with at least 53% of Democrats, Independents, and Republicans stating they would vote in support of the amendment.  The people of Arkansas deserve the opportunity to vote on this important issue.  It serves the public interest to allow them to do so.

The OPA Petition seeks to establish a system of primary and runoff elections that will reduce polarization in legislative bodies. As business leaders Katherine Gehl and Professor Michael Porter have noted, "partisan primaries have over time "forced current and aspiring congresspeople to move further to the left or the right on the political spectrum — and stay there if they hope to get elected. Because primaries are low-turnout elections dominated by highly engaged partisans and special interests, they function almost exclusively as tests of fealty to these gatekeepers, not the public interest, and they hang like swords of Damocles over the heads of elected officials." Katherine M. Gehl, "Final-five voting: Time to get a jump on next year's Democracy Madness," *The Fulcrum* (Jun. 12, 2020), https://thefulcrum.us/voting/katherine-gehl. The OPA Petition seeks to replace this broken system with a model that encourages "innovation, results and accountability. That's what we like to call "free market politics." *Id.*

Additionally, Defendant will suffer no harm if an injunction is granted here. The relief would only apply to the AVF ballot measures for the November 3, 2020 election. Further, any harm the Defendant may incur pales in comparison to the injury suffered by Plaintiffs. AVF's measures have been barred from the ballot even though at least approximately 150,000 Arkansans have signed in support each measure.

Thus, these factors weigh in favor of granting Plaintiffs' requested injunction.

**CONCLUSION**

For the foregoing reasons, Plaintiffs' motion for preliminary injunction should be granted such that the severe burdens placed on Plaintiffs due to the false statement requirement of Ark. Code Ann. § 7-9-601(b)(3) are removed and the Defendant Secretary of State can begin verifying the signatures.

Dated: September 2, 2020

                                        Respectfully submitted,

                                        /s/ David Couch
                                        _____

Ruth Greenwood*                         David A. Couch
Campaign Legal Center                   1501 North University Ave
125 Cambridgepark Drive                 Suite 228
Cambridge, MA 02140                     Little Rock, AR 72207
rgreenwood@campaignlegal.org            (501) 661-1300
(202) 560-0590                          arhog@icloud.com


                                        Christopher Lamar*
                                        Campaign Legal Center
                                        1101 14th Street NW, Suite 400
                                        Washington, DC 20005
                                        clamar@campaignlegal.org
                                        (202) 736-2200

                                        *Attorneys for the Plaintiff*

                                        * Pro Hac Vice admissions forthcoming