**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION**

**BONNIE HEATHER MILLER and LEAGUE OF WOMEN VOTERS OF ARKANSAS** — **PLAINTIFFS**

**V.** — **CASE NO. 5:20-CV-5163**

**JOHN THURSTON, in his official capacity as Secretary of State of Arkansas** — **DEFENDANT**

## MEMORANDUM OPINION AND ORDER DENYING PRELIMINARY INJUNCTION

Before the Court is a Motion for Preliminary Injunction (Doc. 3) filed by Plaintiffs Bonnie Miller and the League of Women Voters of Arkansas ("the League") and a Memorandum Brief in Support (Doc. 4). Defendant John Thurston, sued in his official capacity as Secretary of State of Arkansas, filed a Brief in Opposition to the Motion (Doc. 16). The Court directed Plaintiffs to file a Reply on the issue of redressability (Doc. 19), and the Court held a hearing on the Motion via videoconference on September 14, 2020. The Motion (Doc. 3) is now ripe for decision, and the Court finds that it should be **DENIED**.

## I. BACKGROUND

### A. Statutory Background

Article 5, Section 1 of the Arkansas Constitution, as amended by Amendment 7, reserves to the people "the power to propose legislative measures, laws and amendments to the Constitution, and to enact or reject the same at the polls independent of the General Assembly." Further, Section 1 lays out requirements for such petitions and provides that if any petition is found "to be insufficient," the sponsor shall have at least thirty days to cure such an insufficiency, so long as the petition contains "[a]t least seventy-five percent

(75%) of the number of state-wide signatures of legal voters required." Article 5 also authorizes laws "prohibiting and penalizing perjury, forgery, and all other felonies or other fraudulent practices, in the securing of signatures or filing of petitions."

The statute governing paid canvassers creates obligations for both the canvassers individually and the sponsor of the ballot initiative. *See* Ark. Code Ann. § 7-9-601. Section 601(b) imposes the following requirements on sponsors:

> (1) To verify that there are no criminal offenses on record, a sponsor shall obtain, at the sponsor's cost, from the Division of Arkansas State Police, a current state and federal criminal record search on every paid canvasser to be registered with the Secretary of State.
>
> (2) The criminal record search shall be obtained within thirty (30) days before the date that the paid canvasser begins collecting signatures.
>
> (3) Upon submission of the sponsor's list of paid canvassers to the Secretary of State, the sponsor shall certify to the Secretary of State that each paid canvasser in the sponsor's employ has passed a criminal background check in accordance with this section.

Further, the statute requires the sponsor to collect from each paid canvasser a "signed statement taken under oath or solemn affirmation stating that the person has not pleaded guilty or nolo contendere to or been found guilty of a criminal felony offense or a violation of the election laws, fraud, forgery, or identification theft in any state of the United States . . . ." Ark. Code Ann. § 7-9-601(d)(3).

**B. Factual and Procedural Background**

This year, Arkansas Voters First ("AVF") sought to use this power of petition to place two issues on the ballot in the general election to be held on November 3, 2020: the creation of a citizens' commission for independent redistricting (the "CRC petition") and the adoption of top-four open primaries with ranked-choice voting in the general election (the "OPA petition"). Plaintiff Bonnie Miller is the chairperson of AVF, a registered

voter and a resident of Fayetteville, Arkansas, and a signatory of both petitions. The League joins the suit on behalf of hundreds of members who are registered voters in this state and also signed one or both of the petitions.

When AVF, as the sponsor of each ballot initiative, submitted its lists of paid canvassers to the Secretary of State, each list was accompanied by the following certification:

> In compliance with Arkansas Code § 7-9-601, please find the list of paid canvassers that will be gathering signatures on the [petition issue]. On behalf of the sponsors, Arkansas Voters First, this statement and submission of names serves as certification that a statewide Arkansas State Police background check, as well as, 50-state criminal background check have been timely acquired in the 30 days before the first day the Paid canvasser begins to collect signatures as required by Act 1104 of 2017.

(Doc. 4-1, p. 10; Doc. 4-3, p. 9). On July 14, 2020, the Secretary sent a letter indicating that "[i]t has been determined that acquiring a criminal background check is not the same as passing a criminal background check. Because Arkansas Voters First did not comply with Ark. Code Ann. § 7-9-601(b)(3), none of the signatures solicited by the paid canvassers may be counted for any purpose." (Doc. 4-1, p. 29).

On July 17, Ms. Miller, individually and on behalf of AVF, AVF, and Open Primaries Arkansas ("OPA"), filed suit in the Supreme Court of Arkansas and seeking an injunction that would require the Secretary to count the signatures that the Secretary had determined to be deficient and/or provide Plaintiffs an opportunity to cure the defect. The Court will refer to that case as *Miller I*. The state supreme court initially granted temporary injunctive relief to the plaintiffs, requiring the Secretary to begin verifying the signatures on the petitions and granting plaintiffs a provisional cure period. *See Miller v. Thurston*, 2020 WL 4251759, at *2 (Ark. July 24, 2020).

As directed, the Secretary proceeded to verify the sufficiency of the signatures on each petition. On August 11, 2020, the Secretary informed AVF that the CRC petition did not have enough signatures from registered voters to qualify for a cure period under Article 5, Section 1. (Doc. 16-4). The following week, the Secretary made the same determination regarding the OPA petition. (Doc. 16-5). On August 17, the plaintiffs filed a third amended complaint, seeking an injunction compelling the Secretary to begin verifying the signatures that had been submitted during the provisional cure period granted by the court and to declare AVF entitled to a cure period under the state constitution. The plaintiffs had also included a count challenging the rejection of the popular name and ballot title of the OPA petition by the State Board of Election Commissioners ("SBEC").

Ten days later, a majority of the state supreme court denied plaintiffs any relief. Responding to plaintiffs' argument that "their certification language, when viewed as a whole, certifies that its canvassers passed criminal background checks," the Arkansas Supreme Court held that "[s]imply acquiring or obtaining a background check is not sufficient under the plain language of the statute." *Miller v. Thurston*, 2020 WL 5050355, at *3. In a footnote, the state court opined that "the standard for having 'passed' a criminal background check appears to be having no criminal conviction for a felony offense or a violation of the election laws, fraud, forgery, or identification theft as stated in section 7-9-601(d)(3)." *Id.* at *3 n.4. The court concluded that because the plaintiffs "failed to certify that their paid canvassers had passed criminal background checks[,] . . . the initiative petitions at issue are insufficient and petitions are not entitled to a cure period or any relief." *Id.* at *4. Since it found that the sponsor's certification was not adequate, the state

court held that the challenge regarding the sufficiency of the signatures was moot. *Id.* Separately, the court held that the challenge to the SBEC's rejection of the popular name and ballot title of the OPA petition was also moot. *See Miller v. Thurston*, 2020 WL 5056585, at *1 (Ark. Aug. 27, 2020).

The day after the Arkansas Supreme Court issued its opinion and mandate, the state-court plaintiffs filed a petition for rehearing and motion to recall the mandate. While that motion was pending, Ms. Miller and the League filed suit in this Court, challenging the statutory requirement at § 7-9-601(b)(3) as an undue burden on rights protected by the First Amendment. The state court ultimately denied the petition for rehearing.

## II. ANALYSIS

### A. Redressability

Since constitutional standing is a prerequisite for federal jurisdiction, the Court will first take up the Secretary's argument that Plaintiffs' injury is not redressable by this Court. The Court concludes that the injury Plaintiffs allege can be redressed by the relief they seek from this Court.

#### i. Legal Standard

Article III, Section 2 of the United States Constitution provides the contours of the jurisdiction of the federal courts. "From Article III's limitation of the judicial power to resolving 'Cases' and 'Controversies,' and the separation-of-powers principles underlying that limitation, we have deduced a set of requirements that together make up the "'irreducible constitutional minimum of standing.'" *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 125 (2014) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). Constitutional standing requires three elements: 1) "injury in fact";

2) "a causal connection between the injury and the conduct complained of"; and 3) "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Lujan*, 504 U.S. at 560–61 (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 38, 43 (1976)).

**ii. Discussion**

The Secretary argues that Plaintiffs' alleged injury would not be redressed by the injunctive relief it seeks from this Court. The Secretary points out that even if this Court were to enjoin the enforcement of § 7-9-601(b)(3), Plaintiffs' petitions still would not qualify for the ballot because they lack the requisite number of valid signatures even to qualify for the constitutional cure period, and the language of the OPA petition has been rejected by the SBEC.

In response, Plaintiffs highlight that the injury they allege is not exclusion from the ballot but rather an unconstitutional burden on their right to political expression through the enforcement of § 7-9-601(b)(3). Enjoining the enforcement of the state statute provides redress for that injury—Plaintiffs' political speech, in the form of their signatures on the ballot, will no longer be suppressed by an unconstitutional statute. In other words, the relief of setting aside the statute so that Plaintiffs' "signatures may fairly be judged by the ordinary state process," (Doc. 19, p. 3), will redress the constitutional injury. Plaintiffs recognize that this Court cannot order the CRC and OPA petitions to be placed on the ballot, but the injunction they seek would move them closer to having the petitions appear on the ballot.

The Secretary urges the Court to find this situation analogous to the facts in *Advantage Media, LLC v. City of Eden Prairie*, 456 F.3d 793 (8th Cir. 2006), in which the

plaintiff brought an overbreadth challenge against the city's sign code, pursuant to which plaintiff's proposed billboards had been rejected. The plaintiff proposed that a judgment invalidating the entire sign code would permit it to pursue equitable relief under state law and construct its proposed signs. *See id.* at 799, n.2. The speculative nature of this relief, however, was not the basis on which the court found the plaintiff's harm not to be redressable. Rather, because the court found that the various restrictions in the sign code were severable and the plaintiff had to show "redressability with respect to each provision it challenges as overbroad," the Eighth Circuit concluded that "a favorable decision for Advantage even with respect to those sign code provisions which were factors in the denial of its permit applications would not allow it to build its proposed signs, for these would still violate other unchallenged provisions of the sign code." *Id.* at 801. Thus, "even in victory [plaintiff] would be 'no closer' to erecting its billboards or obtaining damages than when litigation began" and therefore did not have standing to challenge any part of the sign code. *Id.* at 820.

In reply, Plaintiffs suggest that their case is more akin to *Utah v. Evans*, 536 U.S. 452 (2002). In *Evans*, Utah challenged the Census Bureau's report of the official census results, arguing that the Bureau used an impermissible statistical method, the results of which caused Utah to lose one seat in the apportionment of congressional Representatives. North Carolina, intervening on behalf of the Census Bureau, argued that Utah's injury was not redressable because additional statutes made it legally impossible for Utah to be apportioned an additional seat in the House of Representatives even if the Court ordered the Secretary of Commerce to recalculate the numbers and issue a revised report. *Id.* at 461. Because the Court disagreed that the statutes invoked

by North Carolina posed "an absolute legal barrier to relief," it concluded that it was likely that Utah's alleged injury would be redressed by enjoining the census report. *Id.* at 463. Even though action by other parties would be required to alter the apportionment of seats in light of the revised report, the Court observed that "in terms of our 'standing' precedent, the courts would have ordered a change in a legal status . . . , and the practical consequence of that change would amount to a significant increase in the likelihood that the plaintiff would obtain relief that directly redresses the injury suffered." *Id.* at 464.

The Court agrees with Plaintiffs that the case before it is more like *Evans* than *Advantage*. In *Advantage*, the Eighth Circuit concluded that the ultimate relief of erecting the plaintiff's billboards was impossible because the signs would be barred by provisions of the sign code that the plaintiff had not challenged. Here, in contrast, an order invalidating § 7-9-601(b)(3) *would* move Plaintiffs closer to their ultimate goal because it would permit them to return to the state court and challenge the other obstacles to the petitions appearing on the ballot. While it is possible that they ultimately would not prevail in such a challenge, granting Plaintiffs the relief they seek in this Court would increase the likelihood that the petitions could qualify for the ballot and is sufficient to give Plaintiffs standing.

**B. *Rooker-Feldman* Doctrine & Res Judicata**

Next, Defendant argues that the *Rooker-Feldman* doctrine imposes a jurisdictional bar on the ability of a federal district court to consider this case. In the alternative, the Secretary argues that Plaintiffs' claim is res judicata. Since the two doctrines are closely related, the Court will take them up together.

**i. Legal Standard**

"The *Rooker–Feldman* doctrine precludes lower federal courts from exercising jurisdiction over actions seeking review of, or relief from, state court judgments." *Hageman v. Barton*, 817 F.3d 611, 614 (8th Cir. 2016). The doctrine is limited in scope and does not bar jurisdiction over actions alleging independent claims arising from conduct in underlying state proceedings. *Id.* In such cases, rather, "jurisdiction exists, but traditional state-court preclusion principles may prevent a federal plaintiff from succeeding on the merits." *Id.* at 615. In *Exxon Mobil Corporation v. Saudi Basic Industries Corporation*, the Supreme Court rejected the trend in the lower courts to "extend [the doctrine] far beyond the contours of the *Rooker* and *Feldman* cases, . . . superseding the ordinary application of preclusion law pursuant to 28 U.S.C. § 1738." 544 U.S. 280, 283 (2005). The Court admonished that the *Rooker-Feldman* doctrine "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.* at 284. "If a federal plaintiff 'present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party . . . , then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion.'" *Id.* at 293 (quoting *GASH Assocs. v. Rosemont*, 995 F.2d 726, 728 (7th Cir. 1993)) (modifications in original).

Mindful of the Supreme Court's admonition regarding the scope of the *Rooker-Feldman* doctrine and noting the fact that the doctrine's applicability "is sometimes fuzzy on the margins," the Eighth Circuit has queried how a court should proceed "if a *Rooker–*

*Feldman* issue is difficult, but a plaintiff's claim is straightforwardly barred by preclusion law under § 1738 if the federal court has jurisdiction[.]" *In re Athens/Alpha Gas Corp.*, 715 F.3d 230, 234–35 (8th Cir. 2013). Analogizing to situations in which a federal court may consider the merits of a claim in assessing a question of standing, the Eighth Circuit concluded that a federal court may "decide a question of preclusion without first resolving a murky problem under *Rooker-Feldman*, because our inquiries under preclusion law and the *Rooker-Feldman* doctrine would similarly overlap." *Id.* at 235. Thus, it is "permissible to bypass *Rooker-Feldman* to reach a preclusion question that disposes of a case." *Id.*

Regarding preclusion, also known as res judicata, it is established that "[u]nder 28 U.S.C. § 1738, we apply a state's law to decide whether claims previously decided in that state's courts, which are then brought in federal court, are precluded by the prior state court judgment." *Sparkman Learning Ctr. v. Ark. Dep't of Human Servs.*, 775 F.3d 993, 998 (8th Cir. 2014). Under Arkansas law, res judicata bars relitigation in a subsequent suit when:

> (1) the first suit resulted in a final judgment on the merits; (2) the first suit was based upon proper jurisdiction; (3) the first suit was fully contested in good faith; (4) both suits involve the same claim or cause of action; and (5) both suits involve the same parties or their privies.

*Jayel Corp. v. Cochran*, 234 S.W.3d 278, 281 (Ark. 2006). "Res judicata bars not only the relitigation of claims that were actually litigated in the first suit, but also those that could have been litigated." *Id.* "Where a case is based on the same events as the subject matter of a previous lawsuit, res judicata will apply even if the subsequent lawsuit raises new legal issues and seeks additional remedies." *Id.* As to the last element, "[p]rivity exists when two parties are so identified with one another that they represent the same legal right." *Crockett v. C.A.G. Invs., Inc.*, 381 S.W.3d 793, 799 (Ark. 2011). "We have

never required strict privity in the application of res judicata, but instead have supported the idea that there must be a 'substantial identity of parties' to apply the doctrine." *Id.* (quoting *Wells v. Heath*, 602 S.W.2d 665 (1980)).

**ii. Discussion**

Plaintiffs have framed their claim in two different ways before this Court. Plaintiffs' Complaint presents the constitutional violation as one that was ongoing before the state supreme court's judgment and continued after its mandate issued in *Miller I*.[1] In the brief in support of their Motion, Plaintiffs suggest that it was impossible to comply with § 7-9-601(b)(3) in the first instance because the Arkansas State Police do not assign a "passing" or "failing" grade to background checks they generate. (Doc. 4, pp. 4–5). At the hearing, however, when the Court pressed Plaintiffs' counsel as to why a constitutional claim had not been raised in *Miller I*, counsel asserted that "we weren't aware that there was a First Amendment problem until the actual decision came out." Rather, Plaintiffs' counsel indicated that "[t]he problem here is that the [Arkansas] Supreme Court actually gave a construction of [§ 7-9-601(b)(3)] that there is now no way to re-comply. I mean, a potential remedy here would be to allow . . . an amended certification, right?"

---

[1] *See, e.g.*, Doc. 2, p. 12, ¶¶ 50–52 ("AVF was not truthfully able to certify to the Defendant that the AVF-paid canvassers for the CRC Petition and the OPA Petition had 'passed' a criminal background check. Even if a background check was something that could be 'passed,' Ark. Code Ann. § 7-9-601 does not set out a clear standard for what would constitute passing. . . . It was not until August 27, 2020, that the Supreme Court of Arkansas defined having passed a criminal background check . . . ." (internal quotation marks omitted)); *id.* at p. 14, ¶¶ 3–4 ("Ark. Code Ann. § 7-9-601(b)(3) required AVF to make a false statement to Defendant, namely that the paid canvassers it had engaged had 'passed' a criminal background check, when 'passing' such a background check is impossible. The Arkansas Supreme Court's interpretation of [the statute] on August 27, 2020 is of no help to Plaintiffs. It too would require AVF to submit a (different) false statement . . . ." (internal citation omitted)).

If the Court accepted Plaintiffs' modified position that they were not aware of any constitutional violation until after *Miller I* was decided, this framing of the issue would clearly implicate the *Rooker-Feldman* doctrine. Under that theory of their case, Plaintiffs are in essence alleging that the undue burden on their First Amendment rights arises from the state court's decision to apply its holding retroactively by defining what it means to "pass" a background check but refusing to grant the petitioners "a cure period or any other relief." *Miller*, 2020 WL 5050355, at *4. This leaves the Court with the distinct impression that this case is a direct challenge to the state court's holding in *Miller I*. While it may be true that the state court's decision to retroactively hold the state-court plaintiffs responsible for compliance with an interpretation of the statute that had not yet been articulated is an undue burden on their First Amendment rights, only the federal Supreme Court may review the judgments of a state supreme court. *See* 28 U.S.C. § 1257. This Court lacks the jurisdiction to decide that question.

The framing of Plaintiffs' claim in the briefing, on the other hand, is less likely to invoke the *Rooker-Feldman* doctrine but runs right into res judicata. If it was impossible to comply with the statute even before the holding in *Miller I*, then this case is not a direct attack on the state court's judgment. Rather, even though Plaintiffs' claim "denies a legal conclusion" the state court reached in *Miller I*, it is sufficiently independent to permit this Court to exercise jurisdiction, especially given the Supreme Court's clear desire to limit the *Rooker-Feldman* doctrine so as not to encroach on the territory already governed by principles of preclusion.

Assuming jurisdiction in federal court is appropriate, however, Plaintiffs' claim must nevertheless be dismissed as res judicata. Plaintiffs do not dispute that *Miller I* was a

final judgment on the merits, that jurisdiction was proper before the state court, and that the matter was fully contested in good faith. At the hearing, Plaintiffs initially disputed that this case could be considered to involve the same parties as the state-court action or their privies. Upon closer questioning by the Court, however, Plaintiffs' counsel conceded that Ms. Miller was named in her individual capacity before the state court, as she is in the matter before this Court, and "could have added her personal right, First Amendment right, with respect to her signature being counted" in *Miller I*. Additionally, while AVF and OPA were plaintiffs in *Miller I* and the League has been added as a plaintiff before this Court, Ms. Miller is the Director of AVF, (Doc. 4-1, ¶ 2), and a board member of the League, as well as President of its Washington County chapter. *Id.* at ¶ 4. Thus, the Court can conclude that to the extent the parties here are not identical to those in *Miller I*, privity exists between Ms. Miller, AVF, and the League. *See Sparkman*, 775 F.3d at 999 ("Applying Arkansas law, we conclude that [the newly-added plaintiff] is in privity with [the original plaintiff organization] as its executive director . . . . Therefore, the fifth element of claim preclusion is satisfied even with the addition of new parties.").

As to the identity of the claims raised in *Miller I* and before this Court, there is no dispute that *Miller I* did not involve a First Amendment claim, but Plaintiffs did not offer any reason that such a claim could not have been made in *Miller I*. During the hearing, the Court pointed out,

> [Y]ou argued in the Supreme Court that these two issues, the fact that the state police don't do federal background checks and the requirement of passing a background check is impossible because background checks aren't graded like that. I mean, you make the exact same argument here as an undue burden. I don't understand why you couldn't have made that same argument to the Arkansas Supreme Court under the First Amendment.

Plaintiffs' counsel responded, "I appreciate what you're saying, Judge. And I guess the highest I can put it is that we didn't see it as an issue at the time." Under Arkansas law, res judicata precludes claims arising out of the same events that could have been raised in the prior case. The Plaintiffs' First Amendment claim arises out of the same deficiency finding by the Secretary as in *Miller I*, and Plaintiffs have offered no compelling reason why it could not have been pleaded along with the other claims in state court. Therefore, the Court is compelled to find that the doctrine of res judicata bars the claim here.

**C. Likelihood of Success on the Merits**

Even if Plaintiffs' claim was not barred by the doctrine of res judicata, a preliminary injunction still would not be appropriate because the Court is not persuaded of Plaintiffs' likelihood of success on the merits of their claim.

**i. Legal Standard**

The Eighth Circuit has articulated a four-factor test for determining whether to grant a motion for a preliminary injunction: "(1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981) (en banc). "The party seeking injunctive relief bears the burden of proving these factors." *Lankford v. Sherman*, 451 F.3d 496, 503 (8th Cir. 2006). "While no single factor is determinative, the probability of success factor is the most significant." *Home Instead, Inc. v. Florance*, 721 F.3d 494, 497 (8th Cir. 2013) (internal quotation marks and citations omitted). "To that end, 'the absence of a likelihood of success on the merits strongly suggests that preliminary injunctive relief should be denied.'" *Barrett v.*

*Claycomb*, 705 F.3d 315, 320 (8th Cir. 2013) (quoting *CDI Energy Servs., Inc. v. W. River Pumps, Inc.*, 567 F.3d 398, 402 (8th Cir. 2009)).

**ii. Discussion**

Plaintiffs' basis for asserting that the statute constitutes an unconstitutional burden on their First Amendment rights as applied to them is that compliance with the statute was impossible and that it required the ballot sponsor to make a false statement in order to make the required certification. However, the Court concludes that, far from being required to make a false statement, Plaintiffs did not even attempt to make a true certification that would satisfy § 7-9-601(b)(3). As the Court reads Plaintiffs' certification, it contains language to satisfy 601(b)(1)—that a state background check was obtained—and 601(b)(2)—that it was obtained within thirty days before the canvasser began collecting signatures—but contains no language that refers to the requirement in 601(b)(3) to certify that the paid canvassers passed the background check. Even accepting Plaintiffs' premise that before the state supreme court's ruling on August 27, 2020, they did not know what it meant to "pass" a background check and therefore could not certify as much, the Court disagrees that they were left only with the "Hobson's choice" to make no certification or to make a false statement.[2] For example, a plain reading of the statute, without the benefit of the state court's interpretation, might have led AVF to certify truthfully that "the background checks conducted by AVF showed that none of the paid canvassers used by AVF had been convicted of a felony," a statement Plaintiffs made in their Complaint. (Doc. 2, p. 9, ¶ 36). Alternatively, AVF might have certified that

---

[2] As noted above in Section II.B.ii, if the claim is instead that the constitutional harm arose as a result of the state-court judgment, that is a claim over which this Court cannot exercise jurisdiction.

the background checks indicate that the paid canvassers have "no criminal offenses on record," using the language from the first clause of 601(b)(1).

In response, Plaintiffs concede that there were ways AVF might have phrased the certification to attempt to comply with 601(b)(3) but that they were not aware such a certification would be necessary because the language AVF used had previously been submitted to the Secretary of State by another petition sponsor and had not been cited as deficient by the Secretary's office. However, Plaintiffs have not pleaded that the constitutional violation resulted from the Secretary's inconsistent enforcement of the statute. The Complaint alleges that it was impossible to comply with 601(b)(3) before the state supreme court interpreted what was meant by "passing" a background check, and the Court finds that given this exchange with Plaintiffs' counsel, that claim is not plausible. Therefore, even if the Court were to proceed to the merits of Plaintiffs' claim, the Court would find that Plaintiffs have not met their burden of establishing a likelihood of success on the merits of their constitutional claim and are not entitled to a preliminary injunction.

## III. CONCLUSION

For these reasons, Plaintiffs' Motion for Preliminary Injunction (Doc. 3) is **DENIED**. Because the Court finds that Plaintiffs' claim is barred by *Rooker-Feldman* or by res judicata, the case is **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED** on this 15th day of September, 2020.

TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE